IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



MECKLENBURG COUNTY,
VIRGINIA

    Plaintiff,

v.    Civil Action No. 3:19-cv-463

PURDUE PHARMA, L.P.,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the PLAINTIFF'S MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 8); PLAINTIFF'S SUPPLEMENTAL MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 9); and MOVING DEFENDANTS' MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING LIKELY TRANSFER TO MULTIDISTRICT LITIGATION (ECF No. 10). The Court has reviewed the supporting, opposing, and reply memoranda. For the reasons stated below, PLAINTIFF'S MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 8) and PLAINTIFF'S SUPPLEMENTAL MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 9) will be granted, and MOVING DEFENDANTS' MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING LIKELY TRANSFER TO MULTIDISTRICT LITIGATION (ECF No. 10) will be denied.

1

## BACKGROUND

### A. Procedural Background

Plaintiff Mecklenburg County filed this action against the defendants in the Circuit Court of Mecklenburg County, Virginia. Mecklenburg County groups the defendants into the following categories: (1) the "Manufacturer Defendants," who are alleged to have directly caused a public health crisis by failing to adhere to FDA regulations and by failing to implement measures to prevent the filing of suspicious orders; (2) the "Distributor Defendants," who purchased opioids from the Manufacturer Defendants and allegedly failed to effectively monitor and report suspicious orders of prescription opioids or to implement measures to prevent the filing of invalid prescriptions; (3) the "Pharmacy Benefit Manager Defendants" (a.k.a. the "PBM Defendants"), who established formularies to reimburse pharmaceutical companies thereby perpetuating the opioid epidemic; and (4) the "Doe Defendants," who were sued under a fictitious name for participating in the activities that caused the opioid epidemic and for helping the other defendants. See generally Compl. (ECF No. 1-1). In general, the Complaint alleges that the defendants, singularly and collectively, helped cause the opioid epidemic that has resulted in economic, social, and emotional damage to "virtually every community in the United States," all while benefitting themselves economically by manufacturing and selling the opioids while

2

knowing about their addictive properties, distributing them to points of delivery for patients, and prescribing them through pharmacy plan design and formulary management. Id. ¶¶ 1-5.

In the 135-page complaint, most of the allegations are against defendants who do not reside in Virginia. However, there are three Distributor Defendants that are Virginia residents: McKesson Medical-Surgical Inc.; General Injectables & Vaccines, Inc.; and Insource, Inc. The Complaint alleges that the Distributor Defendants (as well as the manufacturing defendants) ignored Virginia law and the Controlled Substances Act (the "CSA"), thereby causing many people to become addicted to drugs. Id. ¶¶ 285-93. The Complaint also alleges that the Distributor Defendants did not maintain effective controls against opioid diversion and did not follow DEA guidance. Id. ¶¶ 309-33. The causes of action against the Distributor Defendants are the following. First, Count I alleges that all the defendants created a public nuisance, and, against the Distributor Defendants specifically, the Complaint states that they failed to implement effective controls or operate system to report suspicious orders and that they enabled "pill mills" to operate in the market. Id. ¶¶ 437-38. Second, Count II alleges that all the defendants created a common law public nuisance and contains the same factual allegations as Count I against the Distributor Defendants. Id. ¶¶ 467-68. Third, Count V alleges that all the defendants participated in a common law

3

civil conspiracy, and, against the Distributor Defendants specifically, Mecklenburg County alleges that they violated Virginia law and the CSA by fraudulently making false or misleading statements, by falsely marketing opioids as safe for treatment of chronic pain, by evading controls on opioid diversion, and by failing to design and operate a system for suspicious orders. Id. ¶¶ 509, 512-14. Fourth, Count VII alleges negligence per se against the Distributor Defendants, stating that they failed to disclose suspicious orders and filled suspicious transactions. Id. ¶¶ 527-34. Fifth, Count VIII alleges negligence against all the defendants, and, against the Distributor Defendants specifically, Mecklenburg County alleges that they failed in their duty to not create a foreseeable risk of harm to others. Id. ¶¶ 535-42. Sixth, Count IX alleges gross negligence against all the defendants, and Mecklenburg County alleges that the defendants failed to take action to prevent unnecessary, nonmedical, or criminal use of opioids. Id. ¶¶ 543-47. Seventh, Count X alleges willful and wanton negligence against all the defendants, and it contains the same allegations as Count IX. Id. ¶¶ 548-53. Finally, Count XI alleges that all the defendants were unjustly enriched by knowingly profiting from opioid purchases that they knew were causing harm. Id. ¶¶ 554-57.

Defendant Actavis LLC ("Actavis") filed DEFENDANT ACTAVIS LLC'S NOTICE OF REMOVAL (ECF No. 1) based on the contention that

4

there is diversity jurisdiction in this case. Defendants Optum, Inc., OptumRx, Inc., and UnitedHealth Group Incorporated (collectively, "Optum") submitted a SUPPLEMENTAL NOTICE OF REMOVAL (ECF No. 7), arguing that there is federal question jurisdiction in this case. In response to these notices of removal, Mecklenburg County filed PLAINTIFF'S MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 8) and PLAINTIFF'S SUPPLEMENTAL MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 9). Further, Optum filed MOVING DEFENDANTS' MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING LIKELY TRANSFER TO MULTIDISTRICT LITIGATION (ECF No. 10), asking this Court to delay its decision on whether to remand the case pending the final decision of the Judicial Panel on Multidistrict Litigation (the "JPML") on transfer of this action to the Multidistrict Litigation pending in the Northern District of Ohio, In Re: Nat'l Prescription Opiate Litig., No. 1:17-md-02804 (the "Opiate MDL").

**B. This Court's And Other District Courts' Responses To Similar Motions**

The Court previously addressed the same arguments made for removal in Dinwiddie County, Virginia v. Purdue Pharma, L.P., No. 3:19-cv-242, 2019 WL 2518130 (E.D. Va. June 18, 2019). There, the Court remanded the case to the Circuit Court of Dinwiddie County, finding the defendants' arguments for federal jurisdiction meritless. The Dinwiddie County opinion noted that other judges,

in this district and across the country, have decided whether to stay the proceedings in their cases so that the JPML could decide whether to transfer the cases to the Opiate MDL. Id. at *2. Some district courts have decided to stay their proceedings, stating in relatively short orders that the judicial cooperation and consistency were their preeminent concerns. See, e.g., Fauquier County v. Mallinckrodt, LLC, No. 1:19-cv-364, ECF No. 33 (E.D. Va. April 17, 2019); Bd. of Supervisors of Prince William Cty. v. Purdue Pharma, L.P., No. 1:19-cv-365, ECF No. 27 (E.D. Va. April 18, 2019); City of Chesapeake v. Purdue Pharma, L.P., No. 2:19-cv-183, ECF No. 26 (E.D. Va. April 24, 2019); Fairfax County v. Purdue Pharma, L.P., No. 1:19-cv-544, ECF No. 21 (E.D. Va. May 16, 2019); Franklin County v. Purdue Pharma, L.P., No. 7:19-cv-302, ECF No. 33 (W.D. Va. May 1, 2019); Alleghany County v. Purdue Pharma, L.P., No. 7:19-cv-275, ECF No. 31 (W.D. Va. May 1, 2019); Roanoke County v. Purdue Pharma, L.P., No. 7:19-cv-271, ECF No. 34 (W.D. Va. May 16, 2019); City of Roanoke v. Purdue Pharma, L.P., No. 7:19-cv-272, ECF No. 38 (W.D. Va. May 16, 2019); City of Bristol v. Purdue Pharma, L.P., No. 1:19-cv-11, ECF No. 35 (W.D. Va. May 16, 2019); City of Salem v. Purdue Pharma, L.P., No. 7:19-cv-273, ECF No. 31 (W.D. Va. May 16, 2019); Halifax County v. Purdue Pharma, L.P., No. 4:19-cv-21, ECF No. 28 (W.D. Va. May 16, 2019); Rockbridge v. Purdue Pharma, L.P., No. 6:19-cv-25, ECF No. 30 (W.D. Va. May 16, 2019); City of Lexington v. Purdue Pharma,

L.P., No. 6:19-cv-21, ECF No. 39 (W.D. Va. May 16, 2019). And, it noted that other district courts have remanded the cases to state court, finding that the cases should be remanded immediately because there clearly was a lack of federal jurisdiction. See Cty. Bd. of Arlington Cty. v. Purdue Pharma, L.P., No. 1:19-cv-402, ECF No. 63 (E.D. Va. May 6, 2019); Dunaway v. Purdue Pharma, L.P., No. 2:19-cv-38, ECF No. 59 (M.D. Tenn. May 22, 2019); see also, e.g., Mayor and City Council of Baltimore v. Purdue Pharma, L.P, No. 18-800, 2018 WL 1963816, at *3 (D. Md. April 25, 2018) (collecting cases in which federal courts have granted motions to remand before the JPML could transfer the cases to the MDL court). The Court has not been notified of any decision in these similar cases in which a court has found that there was federal jurisdiction.

## DISCUSSION

**A. The JPML And The Court's Jurisdiction Over This Motion**

On June 28, 2019, the JPML issued Conditional Transfer Order 101 ("CTO-101"). See Conditional Transfer Order 101 (ECF No. 11-5). However, this Court still has jurisdiction to consider motions to remand while the JPML decides whether to enter the transfer order. See Moore v. Wyeth-Ayerst Labs., 236 F. Supp. 2d 509, 511 (D. Md. 2002) ("The Judicial Panel on Multidistrict Litigation has held that a district court judge has the authority to either wait for a transfer order without ruling on a motion to remand, or to

7

rule on the motion before a transfer order has been issued." (citing In re Asbestos Prods. Liab. Litig., 170 F. Supp. 2d 1348, 1349 n.1 (JPML 2001)). Indeed, the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation expressly provide that a conditional transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." R. Pro. JPML 2.1(d). Thus, the Court can properly entertain the motion to remand.

### B. Removal And Federal Court Jurisdiction

"Federal courts are courts of limited jurisdiction and the threshold requirement in every federal case is jurisdiction." Holt v. Food Lion Grocery Store of Chester, No. 3:18-cv-503, 2019 WL 112788, at *2 (E.D. Va. Jan. 4, 2019) (quoting Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940, 942 (E.D. Va. 2010)). Typically, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Where a defendant seeks to remove a case from state to federal court, "it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn

v. AT & T Mobility, LLC, 530 F.3d 293, 296 (4th Cir. 2008). The removing defendant's burden of demonstrating federal jurisdiction "is no greater than is required to establish federal jurisdiction as alleged in a complaint." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). That said, it is well-settled that "removal jurisdiction is not a favored construction," and, therefore, the Court must "construe it strictly in light of the federalism concerns inherent in that form of federal jurisdiction." In re Blackwater Security Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006). If the Court determines it does not have subject matter jurisdiction over a removed case, it must remand the case back to the state court. See 28 U.S.C. § 1447(c).

For removal based on diversity of citizenship, the Court has original jurisdiction under diversity jurisdiction if the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different States. 28 U.S.C. § 1332(a)(1). A corporation is a citizen of the states in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1); see also Hertz Corp. v. Friend, 559 U.S. 77 (2010) (establishing the "nerve center" test for determining a corporation's principal place of business). Complete diversity—meaning the citizenship of each plaintiff must be different from the citizenship of each defendant—is required. See, e.g., Hoschar v. Appalachian Power Co., 739 F.3d

9

163, 170 (4th Cir. 2014). Accordingly, where the parties are citizens of different states and the amount in controversy—as determined by the initial state court filing at the time of the filing of the notice of removal—satisfies the jurisdictional amount, then the case is removable to this Court under diversity jurisdiction. "The removal rule . . . requires that to support diversity jurisdiction in removed cases, diversity must have existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal." See Rowland v. Patterson, 882 F.2d 97, 99 (4th Cir. 1989).

The Court also has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists only when a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). And, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 813 (1986). A federal question is necessarily raised "only when *every* legal theory supporting the claim requires the resolution of a federal issue." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182 (4th

10

Cir. 2014) (quoting Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc)).

C. **Actavis's Notice of Removal**

Actavis raises three possible bases for removal under 28 U.S.C. § 1332(a)(1) based on diversity jurisdiction: (1) it argues that fraudulent joinder applies; (2) it argues that the Court should sever all claims against the Distributor Defendants under Rule 21; and (3) it argues that fraudulent misjoinder applies. Each theory will be addressed in turn.

1. **Fraudulent Joinder**

First, Actavis argues that fraudulent joinder applies because there are no allegations against the Distributor Defendants who are citizens of Virginia. Instead, in Actavis's view, the claims against those defendants are merely generic, boilerplate jurisdictional allegations that do not relate to the facts alleged throughout the Complaint.

But fraudulent joinder should not be used except in very few circumstances. The Fourth Circuit's test for fraudulent joinder was laid out in Hartley v. CSX Transp., Inc., 187 F.3d 422 (4th Cir. 1999). There, the Fourth Circuit held that:

> To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." . . . The party alleging fraudulent joinder bears a <u>heavy burden</u>—it must

11

show that the plaintiff cannot establish a claim even
after resolving all issues of law and fact in the
plaintiff's favor. This standard is even more favorable
to the plaintiff than the standard for ruling on a motion
to dismiss under Fed. R. Civ. P. 12(b)(6).

Id. at 424 (second emphasis added) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)); see also Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (same); Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (same).

Here, fraudulent joinder clearly does not apply. The Virginia Distributor Defendants are included as some of the Distributor Defendants that Mecklenburg County alleges caused its injury by furthering the opioid crisis. And, Actavis has presented no evidence to fulfill its "heavy burden" that demonstrates either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley, 187 F.3d at 424 (quoting Marshall, 6 F.3d at 232). Instead, it appears that there is at least a possibility that Mecklenburg County may recover from the Virginia Distributor Defendants just as it can against any other defendant.

Further, the cases which Actavis cites for its position are inapposite. As Actavis itself notes in its NOTICE OF REMOVAL (ECF No. 1), in those cases, each district court found that fraudulent joinder applied because the plaintiffs did not allege any

12

wrongdoing by the non-diverse defendants and did not include any factual allegations against them. See, e.g., Galler v. 21st Mort. Corp., No. 3:14-cv-174, 2014 WL 12701066, at *2 (N.D. Fla. Sept. 3, 2014) (stating that the complaint "include[d] no allegations of fact at all" relating to a defendant); Baker v. Select Portfolio Servicing, Inc., No. 1:12-CV-03493-JEC, 2013 WL 4806907, at *6 (N.D. Ga. Sept. 9, 2013) (stating that "[t]he plaintiff ha[d] not provided any specific factual basis for the claims against the defendants and d[id] not mention the defendants individually in the complaint"). Here, by contrast, and wholly apart from the misconduct attributed to all the defendants, the Complaint includes no fewer than 87 paragraphs allege actionable misconduct by the Distributor Defendants, which include the Virginia Distributor Defendants. See Compl. (ECF No. 1-1) ¶¶ 15, 129-64, 202, 215, 285-93, 309-33, 437-38, 467-68, 509, 513, 527-34. Thus, fraudulent joinder is not a basis for removal in this case.

### 2. Severance

Second, Actavis argues that the Court should sever the claims against the Distributor Defendants under Fed. R. Civ. P. 21, saying that severance is allowed when defendants are unnecessary or dispensable. Fed. R. Civ. P. 21 says, "The court may [] sever any claim against a party."

Actavis's argument relies on Sullivan v. Calvert Memorial Hospital, 117 F. Supp. 3d 702 (D. Md. 2015), wherein the court

13

granted a motion to sever when a plaintiff—who had a catheter negligently left in him after a surgery that later caused her medical problems—sued defendants who manufactured the catheter as well as doctors and other hospital defendants who negligently left it in him.  Id. at 704-05.  The court granted the motion because it found that the hospital defendants were not necessary parties to the claims against the manufacturer defendants.  Id. at 705.  But, it was clear from the complaint in Sullivan that the first two counts of the complaint applied only to the manufacturer defendants and the second two counts applied only to the hospital defendants, making the claims between the two types of defendants severable.  Id. at 706.

Mecklenburg County responds that Rule 21 does not provide a basis for severance when certain claims are brought against all defendants.  Among other cases, Mecklenburg County points to Cty. of Anderson v. Rite Aid of S.C., Inc., No. 8:18-cv-1947, ECF No. 44 (D.S.C. Aug. 20, 2018), in which the court held that "the facts alleged in the Complaint are sufficiently intertwined with respect to all of the Defendants.  The claims are not so separate and distinct that keeping them joined would result in an injustice.  On the contrary, keeping the parties and claims joined will promote efficiency and minimize delay, inconvenience, and expense to the parties."  Id. at *16.

14

Here, Actavis argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants (specifically against the Virginia Distributor Defendants). But that is not so. The Complaint alleges that all the defendants, including the Virginia Distributor Defendants, participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. See generally Compl. (ECF No. 1-1). And many of the Counts within the Complaint allege that <u>all</u> defendants are responsible for the harm to Mecklenburg County. See id. ¶¶ 428-56 (Count I - public nuisance claim); ¶¶ 457-86 (Count II - common law public nuisance claim); ¶¶ 507-17 (Count V - common law civil conspiracy claim); ¶¶ 527-34 (Count VII - negligence per se); ¶¶ 535-42 (Count VIII - negligence); ¶¶ 543-47 (Count IX - gross negligence); ¶¶ 548-53 (Count X - willful and wanton negligence); ¶¶ 554-57 (Count XI - unjust enrichment).

### 3. Fraudulent Misjoinder

Third, Actavis argues that fraudulent misjoinder applies because some claims were brought against certain defendants merely to defeat diversity jurisdiction. Actavis notes that the Fourth Circuit has not weighed in on whether this is a valid reason for diversity jurisdiction.

Fraudulent misjoinder is an exception to the well-pled complaint rule that allows a federal court to allow removal on the

basis of diversity jurisdiction while disregarding the citizenship of non-diverse parties who were improperly joined. See Cty. Bd. of Arlington Cty., No. 1:19-cv-402, ECF No. 63, at *11 (citing Wyatt v. Charleston Area Med. Ctr., 651 F. Supp. 2d 494, 496 (S.D. W.Va. 2009)). "Fraudulent misjoinder 'is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal.'" Id. (emphasis in original) (quoting Wyatt, 651 F. Supp. 2d at 496).

Even assuming that fraudulent misjoinder is a proper basis for removal (which is not clear since the Fourth Circuit has not expressly recognized it), the doctrine would not apply here because the claims asserted against the Distributor Defendants are clearly connected to those made against the Manufacturer and PBM Defendants. The claims against all the defendants are factually, legally, and logically related, arising out of the alleged interconnected activities, from manufacturing the opioids to delivering them to patients. Thus, the claims against the Distributor Defendants were not misjoined. Indeed, the Distributor Defendants are the crucial link between the Manufacturer Defendants and patients who received the opioids. Fraudulent misjoinder is not a proper basis for removal.

16

D. **Optum's Notice of Removal**

In its SUPPLEMENTAL NOTICE OF REMOVAL (ECF No. 7), Optum argues that the case is like a class action because plaintiff has claims for local residents. So, in its view, there is federal jurisdiction under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005). Further, Optum argues that there is federal question jurisdiction because Mecklenburg County says that the defendants violated federal regulations under the CSA. Neither argument is persuasive.

1. **CAFA**

Optum is incorrect that CAFA applies. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). This action is not a class action; it has only one plaintiff, Mecklenburg County. CAFA does not apply because Mecklenburg County is bringing a case on behalf of itself for the economic injuries and references in the Complaint about injuries to its residents do not transform the case into a class action. See City of Galax v. Purdue Pharma, L.P., No. 7:18-cv-617, 2019 WL 653010, at *5 (W.D. Va. Feb. 14, 2019). Further, Mecklenburg County did not file this action pursuant to any Virginia statute

17

or rule that allows for representative claims or is otherwise similar to Fed. R. Civ. P. 23. So, if the Court were to find that this action qualified under CAFA, it would do so in violation of AU Optronics v. South Carolina, 699 F.3d 385 (4th Cir. 2012), in which the Fourth Circuit held that the state of South Carolina, rather than its citizens, was the real party in interest of an action, meaning that the action was not a "class action" under CAFA. Id. at 394. Mecklenburg County seeks to vindicate only its interest in enforcing Virginia's laws rather than the injured citizens who may want to recover for their specific injuries. Thus, CAFA does not apply.

### 2. Federal Question

Optum is also incorrect that there is federal question jurisdiction here. As explained above, federal question jurisdiction exists only when a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258. And, a federal question is "necessarily raised . . . only when every legal theory supporting the claim requires the resolution of a federal issue." Flying Pigs, 757 F.3d at 182 (quoting Dixon, 369 F.3d at 816).

As a preliminary matter, every Count of the Complaint is a state law claim either under a Virginia statute or Virginia common

18

law. See Compl. (ECF No. 1-1) ¶¶ 428-557. Further, although the Complaint references the CSA and the defendants' reporting requirements under federal law, no claims depend exclusively (or even primarily) on their duty under federal law. Instead, each claim could go forward even without a reference to federal law. Accordingly, the Court does not have federal question jurisdiction over the claims.

### E. Optum's Motion to Stay

Finally, the Court must consider whether it should stay the action even though there is plainly no federal jurisdiction in this case. Optum filed MOVING DEFENDANTS' MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING LIKELY TRANSFER TO MULTIDISTRICT LITIGATION (ECF No. 10) arguing that the Court should stay the proceeding so that the JPML can decide whether to transfer the case. Optum argues: (1) any stay will be brief; (2) failing to stay the action will impose "significant hardships" on the defendants; (3) Mecklenburg County fails to identify any meaningful prejudice; (4) staying the action will promote judicial efficiency; and (5) staying the action is consistent with the "general rule" to defer jurisdictional issues to the MDL court.

The Court finds that a stay is not warranted. First, Mecklenburg County notes that, even if a stay is brief in this case, any decision on the motion to remand could take a significant amount of time, maybe even over a year. This extensive delay is

19

a significant prejudice to Mecklenburg County as it will not be able to effectively prosecute its case even though there is no federal jurisdiction. Further, judicial efficiency will not be promoted because the case should proceed in state court as soon as possible since there is no basis for federal jurisdiction in this case. Thus, a stay is not warranted.

## CONCLUSION

For the foregoing reasons, PLAINTIFF'S MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 8) and PLAINTIFF'S SUPPLEMENTAL MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW (ECF No. 9) will be granted, and MOVING DEFENDANTS' MOTION FOR TEMPORARY STAY OF PROCEEDINGS PENDING LIKELY TRANSFER TO MULTIDISTRICT LITIGATION (ECF No. 10) will be denied.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 17, 2019